JOSEPH A. MUDD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 14028. Promulgated January 18, 1929.

*D. E. Currier, C. P. A.*, for the petitioner.
*J. E. Mather, Esq.*, for the respondent.

1418

OPINION.

TRAMMELL: The record and our findings of fact and decision in the case of *Chicago Binder & File Co.*, 4 B. T. A. 1002, were introduced in evidence in this case and there was no contention that our findings of fact or decision in that case were incorrect. Since we held in that case that the amounts received by the petitioner from the corporation in the way of bonds and securities, cash in bank, and accounts and notes receivable were received by the petitioner in partial liquidation of the corporation, those findings and decision are prima facie correct, and there being no contention on the part of either side that they are incorrect, they will be taken as correct. This being true, the sale of the stock by the petitioner

and the receipt by him from the corporation of the securities and bills and accounts receivable must be separated in order to determine the gain or loss resulting from the sale of the petitioner's stock. Evidence was introduced as to the dates when the petitioner received certain of the accounts receivable, apparently upon the theory that the date of their receipt had some material bearing upon the gain or loss received from the sale of the stock. It was apparently the petitioner's theory that the consideration received for the sale of the stock was the cash, the promissory note, and certain assets of the corporation, but this theory is entirely inconsistent with the theory advanced relating to the same transaction in the case of *Chicago Binder & File Co., supra*, and is inconsistent and contrary to our findings of fact and decision in that case. The sale of the stock was one transaction and the partial liquidation of the corporation and the distribution by it to the petitioner was another transaction, giving rise to gain or loss separate and distinct from any gain or loss that might have been derived from the sale of the stock.

The petitioner sold, in 1920, 300 shares of stock which had a market value on March 1, 1913, of $44,505, which was in excess of cost, and 200 shares which cost $17,275.35, making a total of $61,780.35. The sales price of this stock was $40,000, of which $10,000 was paid in cash and $2,000 during the same taxable year, which amount exceeds 25 per cent of the sales price. The question then to be determined is whether the note had a market value, and if so, what was that market value. There was no testimony introduced aside from the form of the note and its contents as to whether it had a market value or not. The question of market value is a question of fact, and the fact that the note contains certain contractual provisions in addition to the promise to pay is not sufficient evidence to warrant us in holding that it had no market value or that it had a market value of less than its face value. The petitioner testified as to the financial responsibility of the maker of the note and there is no question but that he was fully able to meet his obligation. It may well be that there was no market for this kind of paper, but we can not assume that fact. It may well be true that this paper was worth less than its face value. On this question it appears that the note did not bear interest. This being true, it should be discounted at the legal rate of interest in Illinois, which is 6 per cent per annum. The value of the unpaid amount of $28,000 of the note after 1920 should be reduced by 7 per cent, which is the legal rate averaged over the period, considering the fact that the note was payable monthly. There is no other evidence in the record which will warrant us in finding that the note had a less value. We can not supply

by surmise what the evidence omits. The result of this transaction is that the petitioner sustained a loss in the amount of the difference between $61,780.35 and $38,040, the latter being the cash received and the discounted value of the note.

The petitioner, however, received as liquidating dividend the net amount of $33,679.40, being the difference between the accounts and bills payable and accounts and bills receivable. To the amount of the obligation which the petitioner was required to pay in connection with the tax liability of the Chicago Binder & File Co., which he had agreed to pay in consideration of receiving the assets from the corporation, there should be added the amount of $2,137.85, which would reduce the amount of the liquidating dividend received from the corporation to that extent, making the amount of the liquidating dividend as determined by us in *Chicago Binder & File Co., supra,* $31,541.55. This makes the total amount received by the petitioner as the result of the partial liquidation of the company and the distribution of the assets in question and the sale of the stock, $69,581.35. The amount subject to tax received by the petitioner in 1920 as a result of these transactions would be the net amount of the difference between the cost or March 1, 1913, value of the stock sold and the amount received for the stock together with the net amount of assets distributed, $31,541.55.

*Judgment will be entered under Rule 50.*